## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TOTAL QUALITY LOGISTICS, LLC,  :  Case No. 1:12-cv-620

            :

  Plaintiff,        :  Judge Timothy S. Black

            :

vs.            :

            :

MACKTOON, INC., DBA     :

ARROW TRANSPORTATION,   :

            :

  Defendant.      :

### ORDER GRANTING PLAINTIFF'S MOTION
### FOR AN AWARD OF ATTORNEY'S FEES (Doc. 62)
### AND MOTION FOR AN AWARD OF COSTS (Doc. 63)

This civil action is currently before the Court on Plaintiff Total Quality Logistics, LLC's Motion for an Award of Attorney's Fees (Doc. 62) and Motion for an Award of Costs (Doc. 63), and the parties' responsive memoranda.  (Docs. 64 and 65).

## I.  BACKGROUND

The facts of this case are set forth in the Court's Findings of Fact and Conclusions of Law entered on February 19, 2014.  (Doc. 60).  Pertinent to the present motion, there was a written Broker/Carrier Agreement between Plaintiff and Defendant.  (*Id.* at 3). Paragraph 16 of that agreement sets out the parties' dispute resolution procedure: for disputes involving $10,000 or less, the parties are to confer and engage in binding arbitration if they cannot agree on a resolution.  (Doc. 24-1 at 4).  "For disputes whose amount in controversy exceeds $10,000.00 the Parties will seek litigation."  (*Id.*) Paragraph 16 further states that if a dispute arises between the parties resulting in

litigation, "CARRIER agrees to pay all reasonable expenses, attorney fees and costs (including court costs) that BROKER incurs in any such litigation."  (*Id.*)

Shortly after removing this action to this Court, despite the explicit limitation of arbitration to disputes involving $10,000 or less in the Broker/Carrier Agreement, and despite Defendant's express acknowledgement that "[t]he alleged actual loss or injury to the property in question is in excess of Ten Thousand Dollars," Defendant filed a motion to dismiss or stay pending arbitration on August 22, 2012, arguing that this action was subject to arbitration.  (Doc. 24-1 at 4; Doc. 1 at 2; Doc. 5).  The Court concluded in its Order denying Defendant's motion that "the motion must fail based on the express language of the agreement."  (Doc. 11 at 2).

In the course of discovery in this action, Plaintiff served Defendant with Requests for Admissions.  (Doc. 62-2 at 6-11).  Defendant's responses were served February 21, 2013. (*Id.* at 12-16).  Plaintiff's Request No. 4 asked Defendant to "[a]dmit that the cargo transported by Defendant during the Utah Trip was in a good and frozen condition when that cargo was loaded into Defendant's Truck at the beginning of the Utah Trip."[1] (*Id.* at 9).  Defendant's response was "Deny."  (*Id.* at 15).  Plaintiff's Request No. 5 asked Defendant to "[a]dmit that not all of the cargo transported by Defendant during the Utah Trip was in a good and frozen condition when the cargo was unloaded from Defendant's Truck at the end of the Utah Trip."  (*Id.* at 9).  Again, Defendant's response was "Deny."

---

[1] The "Utah Trip" was defined in the Requests as "Defendant's transportation of cargo from Malvern, Pennsylvania to Clearfield, Utah as alleged in paragraph 7 of TQL's Complaint and admitted in paragraph 7 of Defendant's Answer in this action."  (Doc. 62-2 at 6).

(*Id.* at 15).

Because Defendant did not admit that the cargo was in good and frozen condition

when it went into Defendant's truck, Plaintiff deposed Daryl Moats, a designated

representative of the Americold facility in Malvern, Pennsylvania, from which the cargo

originated. (Doc. 23). Citing to Mr. Moats's deposition, the Court found that "[t]he

undisputed testimony is that the cargo was in good condition and frozen when it was

loaded onto Defendant's truck." (Doc. 60 at 3). Similarly, because Defendant did not

admit that not all of the cargo was delivered in good and frozen condition, Plaintiff

deposed Drew Dunifer, who observed the cargo when it was unloaded in Clearfield,

Utah. (Doc. 21). Citing to Mr. Dunifer's deposition, the Court found that the

temperature of the cargo was above freezing at the time it was unloaded. (Doc. 60 at 7).

In addition to Mr. Moats and Mr. Dunifer, Plaintiff also took the depositions of

Dick Powell and Keith Macktoon. (Docs. 22 and 24). This action was submitted to the

Court for trial on depositions, and the testimony of all four of these witnesses was utilized

by the Court in its Findings of Fact and Conclusions of Law. (Doc. 60). The Court

entered judgment against Defendant in the amount of $36,589.08. (*Id.* at 14).

## II.  ANALYSIS

### A.  Motion for Attorney's Fees

It is well-settled that the Carmack Amendment preempts state statutes that provide

for fee-shifting. *See, e.g., Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874

(5th Cir. 1996). However, that settled principle does not answer the question of whether

the Carmack Amendment preempts a carrier's voluntary fee-shifting agreement. That question is answered instead by federal statutory law, specifically 49 U.S.C. § 14101 (b)(1). This statute states:

> A carrier providing transportation or service subject to jurisdiction under chapter 135 may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A), to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not subsequently be challenged on the ground that it violates the waived rights and remedies.

49 U.S.C. § 14101(b)(1). Jurisdiction under chapter 135 extends to any interstate transportation. 49 U.S.C. § 13501(1)(A). As the freight being carried in this case was frozen bread products and not "household goods," § 14101(b)(1) is fully applicable. Paragraph 16 of the Broker/Carrier Agreement is one of the "specified … conditions" to which Plaintiff and Defendant agreed in writing. While the Carmack Amendment preempts state law, it does not preempt another federal statute. Moreover, nothing in the Carmack Amendment conflicts with § 14101(b)(1).

Defendant reads *Great West Cas. Co. v. Flandrich*, 605 F.Supp. 2d 955 (S.D.Ohio 2009), too broadly. Plaintiff in that case was the subrogated insurer for the shipper. *Id.* at 960. The shipper issued a bill of lading for the cargo at issue which stated that "every service to be performed hereunder shall be subject to the terms and conditions of [this] Uniform Domestic Straight Bill of Lading." *Id.* (brackets in original). The court found that "[t]here is nothing in the Bills of Lading that entitles American Foods to attorney's

4

fees." *Id*. at 967-68.  Because the document designated by the shipper as the document

supplying the terms governing the carriage did not provide for recovery of attorney's

fees, the court had no need to consider 49 U.S.C. § 14101(b)(1).

In this case, neither Plaintiff nor Defendant issued a bill of lading.  The bill of

lading submitted by Defendant was issued by third party Americold.  (Doc. 23 at 10-11).

Plaintiff is not mentioned anywhere in this bill of lading, there is nothing in the record to

show that Plaintiff ever saw this bill of lading and, unlike the shipper in *Great West*,

Plaintiff did not state that this bill of lading contained the terms governing carriage of the

relevant cargo.  An entity is not bound by a bill of lading to which it is not a party.  *Great

West*, 605 F.Supp. 2d at 965.  The contract between Plaintiff and Defendant is the

Broker/Carrier Agreement.  Paragraph 16 of that contract, which Defendant has

previously relied on in this litigation, contains Defendant's express agreement to pay

Plaintiff's reasonable attorney's fees.

Questions about the enforceability of the clause were Defendant hypothetically not

at fault are irrelevant here, as Defendant was at fault and did breach.  The facts are <u>clear</u>

that Defendant did not deliver the relevant cargo in the same condition as Defendant

received it, that Defendant did not maintain the cargo at -10 degrees as required by both

the Rate Confirmation issued by Plaintiff and the bill of lading issued by Americold, and

that Defendant's delay in replacing the belt on its refrigeration unit resulted in the entire

cargo being lost.  There can be no question that Plaintiff was the prevailing party in this

case, and thus contrary to Defendant's assertions, Plaintiff does not seek to penalize

Defendant "regardless of breach or fault" or in any "unjust and unreasonable" way. (Doc. 64 at 4).

The evidence of record establishes the work performed in this action by Plaintiff's counsel.  (Doc. 62-2 at 17-22).  Plaintiff's counsel expended 133.5 hours of attorney time, which the Court finds is reasonable given the procedural posture and circumstances of the case.  (*Id.* at 4-5).  Plaintiff has calculated its attorney's fees based on an hourly rate of $250, which the Court finds is reasonable for the current Cincinnati market.  (*Id.*)  Consequently, Plaintiff requests an award of attorney's fees in the amount of $33.375.00.

Based on the foregoing, the Court finds that the parties' fee-shifting provision in the Broker/Carrier Agreement is enforceable and that Plaintiff is entitled to recover $33,375.00 in attorney's fees from Defendant.

**B.      Motion for Costs**

"Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party."  *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989); *see also*, *e.g.*, *Watkins & Son Pet Supplies v. Iams Co.*, 197 F.Supp. 2d 1030, 1036 (S.D. Ohio 2002).

Plaintiff has shown that Mr. Moats's deposition was necessary to establish that the cargo involved in this case was in good and frozen condition when it was loaded onto Defendant's truck in Pennsylvania, that Mr. Dunifer's deposition was necessary to establish the condition of the cargo when it was unloaded from Defendant's truck in

6

Utah, that Mr. Powell's deposition was necessary to establish that Defendant's allowing

the products to become as warm as they were necessitated disposal of the products and to

establish damages, and that Mr. Macktoon's deposition was necessary for Plaintiff to

learn Defendant's version of events and to establish the facts that substantially

diminished the credibility of that version.  (Doc. 60 at 9-10).  Plaintiff has further shown

that exclusive of attorney's fees, it paid $502.30 to obtain Mr. Macktoon's deposition,

$1,106.51 to obtain Mr. Dunifer's deposition, $588.00 to obtain Mr. Moats's deposition,

and $721.55 to obtain Mr. Powell's deposition.  (Doc. 63-2 at 2-6).  The total cost for the

four depositions was therefore $2,918.36.  Defendant has not specifically opposed the

substance of Plaintiff's Motion for an Award of Costs.

Based on the foregoing, the Court finds that Plaintiff is entitled to recover

$2,918.36 in deposition costs from Defendant.

### III.    CONCLUSION

Accordingly, Plaintiff's Motion for an Award of Attorney's Fees (Doc. 62) and

Plaintiff's Motion for an Award of Costs (Doc. 63) are hereby **GRANTED**.  Plaintiff

shall recover **$33,375.00** in attorney's fees and **$2,918.36** in costs from Defendant

Macktoon, Inc., for a total of **$36,293.36**.

**IT IS SO ORDERED.**

Date:  9/9/14                                                             *s/ Timothy S. Black*
                                                                          Timothy S. Black
                                                                          United States District Judge